

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

April 6, 2021

**BY ECF**

Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:    *United States v. Hua Fen Bi*, 20 Cr. 401 (CM)

Dear Judge McMahon:

    The defendant in this case, Hua Fen Bi, is scheduled to be sentenced on April 8, 2021, having pled guilty, pursuant to a plea agreement, to conspiracy to operate an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 371. The Government respectfully submits this letter in advance of the sentencing.

    In the plea agreement, the parties stipulated that the Guidelines range was 30 to 37 months' imprisonment (the "Stipulated Guidelines Range"). In its Presentence Investigation Report ("PSR"), dated October 29, 2020, the Probation Department calculates the same Guidelines Range but recommends a variance of four years' probation. For the reasons explained in this letter, the Government believes that a sentence within the Stipulated Guidelines Range is sufficient, but not greater than necessary, to account for the factors set forth in Title 18, United States Code, Section 3553(a).

## BACKGROUND

### A. Offense Conduct

    Beginning in or around 2019, federal agents with the Drug Enforcement Administration ("DEA") uncovered a series of suspicious financial transactions involving a physician (the "Physician") and several Chinese-owned businesses in the New York City area. That investigation revealed that, between 2016 and 2019, the Physician would routinely write checks to Chinese business owners for different amounts of money and, in exchange, would receive cash from the businesses less a six percent fee the Physician paid. (*See* PSR ¶¶ 19-29). The purposes of this scheme was, among other things, to reduce the Physician's tax liability by allowing the Physician to deduct fraudulent business expenses from his taxable business income.

Honorable Colleen McMahon
April 6, 2021
Page 2 of 5

The Physician and defendant were business associates. Among other things, the defendant rented office space to the Physician in Queens, New York. (PSR ¶ 8). As part of their business relationship, however, the defendant also assisted the Physician with his fraudulent scheme. The Physician would write checks to businesses owned by the defendant, and the defendant would give cash from his businesses to the Physician. In addition, the defendant would recruit other business owners, who were looking to get cash into the banking system, to provide cash to the Physician in exchange for checks from the Physician. (PSR ¶¶ 19-29). The defendant received a six percent fee for each transaction performed.

By enabling these financial transitions, the defendant operated a money transmitting business—e.g., he helped business owners convert their cash into deposits in the banking system, while also helping the Physician convert bank deposits into cash.[1] However, the defendant was not licensed to operate a money transmitting business, as is required under New York and federal law. (PSR ¶¶ 9-15). Altogether, the defendant helped to exchange nearly one million dollars. (PSR ¶ 8).

On August 7, 2020, the defendant appeared before the Honorable Kevin Nathaniel Fox, United States Magistrate Judge, and pleaded guilty to a one-count Information that charged him with conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. § 371. (PSR ¶ 4; *see* Plea Tr. 26-28).

### B. The Presentence Investigation Report

On October 29, 2020, the Probation Department issued the PSR for the defendant in this case. The Probation Department calculates a Guidelines Range of 30 to 37 months' imprisonment, consistent with the plea agreement. The Probation Department recommends a variance of 4 years' probation, a fine of $2,500, and forfeiture of $919,832.80.

## ARGUMENT

### A. Applicable Law

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all

---

[1] As part of the investigation, agents seized approximately $250,000 in cash from the Physician during the execution of several search warrants. (PSR ¶ 30).

sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id*. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within the Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that the district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *Rita*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

### B. Discussion

In this case, a sentence within the Stipulated Guidelines Range of 30 to 37 months' imprisonment is fair and appropriate.

First, as detailed above, the financial crimes committed by the defendant are serious. Over a three-year period, the defendant helped the Physician to exchange more than one million dollars in checks for cash, thereby assisting the Physician in reducing his tax liability. At the same time, the defendant helped business owners who had unreported cash income put those dollars into the banking system. For these efforts, he personally made at least $60,000, or six percent of the total amount exchanged. This illegal conduct continued over the course of many transactions and was not an aberration or one-time mistake. Thus, given the serious nature of this conduct, a sentence within the Guidelines is appropriate.

Second, a Guidelines sentence is necessary to deter the defendant from future conduct, promote general deterrence and promote respect for the law. As noted above, the defendant's illegal actions continued over a lengthy period of time. Although not entirely clear, it appears that the defendant acted out of greed, a loyalty to the Physician, and a troubling belief that the rules and regulations regarding financial transactions did not apply to him. Given this, it is critical that the Court impose a meaningful sentence that will deter the defendant from future criminal conduct. At the same time, a sentence within the Stipulated Guidelines Range will send the message to others who seek to engage in this conduct that there are consequences for their actions, and that their crimes will be fully investigated and prosecuted.

The Government is sympathetic to the personal history and characteristics of the defendant, including his difficult childhood, lack of criminal history, and strong work ethic in becoming a doctor and businessman in the United States. These, of course, are factors the Court should consider in determining an appropriate sentence. On the other hand, these attributes make it even more disappointing that the defendant choose to engage in a course of criminal conduct, over a lengthy period of time, after gaining so much in the United States. The defendant became successful—opening and running several businesses as detailed on the PSR—but that simply was not enough for him. He wanted more money, and he chose to break the law to do so.

The Government also disagrees with the defendant's argument that the Stipulated Guidelines Range overstates the defendant's culpability. (Def. Mem. 9). It is well-settled that loss amount for purposes of the Guidelines is not the amount of money the defendant put in his pocket (here, approximately $60,000) but instead "seeks [] to measure the seriousness of [the defendant's] conduct"—i.e., the one million dollars that the defendant helped to exchange for the Physician and others. *See United States v. Certified Environmental Services, Inc.*, 753 F.3d 72, 102 (2d Cir. 2014); *see also* U.S.S.G. § 2B1.1 app. note 3(A). Therefore, the Stipulated Guidelines Range accurately reflects the nature of the defendant's criminal conduct.

## CONCLUSION

For these reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines Range is warranted for Hua Fen Bi.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: _____/s/_____
Emily Deininger
Alexandra Rothman
Assistant United States Attorneys
(212) 637-2580

cc: Edward Sapone, Esq. (via ECF)